**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Appellant,**

v.

**John DAIGH, Respondent.**

No. 9036.

Springfield Court of Appeals, Missouri.

Feb. 23, 1971.

Robert L. Hyder, Ray Conrad, Jefferson City, for appellant.

No appearance for respondent.

TITUS, Presiding Judge.

A westbound Oldsmobile (driven by defendant) collided with plaintiff's eastbound dump truck (driven by its employee, Larry Hurt) on the south side of Dade County Route Z (a two-lane blacktop thoroughfare), and plaintiff brought this action to recover $1,649.01 in property damages. At the close of plaintiff's evidence, the trial court directed the jury to return a verdict for defendant because, as it opined, plaintiff's employee (and, hence, the plaintiff) was guilty of contributory negligence as a matter of law. No one questions that plaintiff made a submissible case against the defendant—the sole point upon this appeal by plaintiff is whether the question of its contributory negligence and the issue of causation should have been decided by the jury.

Plaintiff's driver Hurt was the only witness who testified to the matters which concern us here. He stated that at the time of the daylight accident plaintiff's truck was in good operating condition except the "horn didn't work" and hadn't worked for the previous three or four days. Hurt recounted that when the truck crested a hill just west of the casualty site it was traveling 30 to 40 miles per hour and as he looked eastward from this point he espied defendant's approaching Oldsmobile 300 to 400 yards away "going over fifty." The truck driver immediately commenced to slow the truck's speed, "I tried to stop and I crowded my side of the road as much as I could" because he saw that the Oldsmobile was drifting southward across the center line "angling my way * * * at a steady angle." When 100 to 300 yards separated the two vehicles, Hurt "definitely" observed that defendant was looking south out the opened left window of the automobile "into a field" and was, or appeared to be, oblivious of the truck and the fact that the Oldsmobile was on a collision course with it. Hurt continued his surveillance of the oncoming automobile until the vehicles were 50 to 100 yards apart, at which time Hurt turned his gaze toward the south ditch for which he was headed in an effort to elude the Oldsmobile. The impact occurred when plaintiff's truck was still in motion at an unstated speed and traveling partially upon the south highway berm.

That part of Hurt's cross-examination testimony which prompted the court to direct the verdict, is as follows:

"Q If you had had a horn, would you have sounded it? A Yes, I would

have. Q Those horns are pretty loud on those trucks, aren't they? A Yes. Q Had you had the horn in operation on your truck, had it been working properly when you first saw the driver of the automobile looking south out of his window, he would have had sufficient time, would he not * * * [i]n normal operation of his automobile to have pulled it back on his side of the road? A Yes. Q As a matter of fact, he would have had sufficient time, the last time you saw the automobile, to have pulled it back on his side of the road had the horn been sounded * *? * * * A Yes, he would have."

Whether plaintiff was contributorily negligent was a jury question unless, from all the evidence and its reasonable inferences viewed in the light most favorable to plaintiff, it can be said that the only reasonable conclusion is that plaintiff was negligent and its negligence was a proximate cause of its damages [Adkins v. Boss, Mo., 290 S.W.2d 139, 140(1)], and "[t]he rule as to the quantum of contributory negligence which is sufficient to prevent recovery is that it must be such as to enter into and form the direct, producing, and efficient cause of the casualty, and absent which the casualty would not have happened." Howard v. Scarritt Estate Co., 267 Mo. 398, 402, 184 S.W. 1144, 1145(2); McConnell v. Pic-Walsh Freight Company, Mo., 432 S.W.2d 292, 297(7, 8); Robinson v. Gerber, Mo.App., 454 S.W.2d 933, 936–937; Leek v. Dillard, Mo.App., 304 S.W.2d 60, 65.

Our references to statutes herein are to RSMo 1969, V.A.M.S. Subsec. 1, § 307.170 provides: "Every motor vehicle shall be equipped with a horn, directed forward, or whistle in good working order, capable of emitting a sound adequate in quantity and volume to give warning of the approach of such vehicle to other users of the highway * * *." This statute, as well as the common law, also imposes a duty on motorists to sound a warning when necessary for the safety of others and themselves. Robertson v. Scoggins, Mo.App., 73 S.W.2d 430, 434; Robinson v. Ross, Mo.App., 47 S.W.2d 122, 126(8); Miller v. Wilson, Mo.App., 288 S.W. 997, 999(7, 8). As often stated, violation of a statute is negligence per se [Downing v. Dixon, Mo., 313 S.W.2d 644, 650(4)], and while it may be said that plaintiff was negligent in permitting its truck to be operated without a workable horn, or that plaintiff's driver was negligent in not sounding a warning under the circumstances of this case, this does not entirely dispose of the question of plaintiff's contributory negligence. Bracken v. Koch, Mo.App., 404 S.W.2d 201, 204(5). Such negligence would not bar plaintiff's recovery as a matter of law unless an occasion arose under circumstances which would require a horn to be sounded, and the only reasonable conclusion to be drawn from the inability or failure to do so would be that the absence of the warning was a proximate cause of the collision and resulting damages. Henry v. Baker, Mo. App., 419 S.W.2d 486, 490(5).

When plaintiff's driver first observed defendant's automobile encroaching upon his side of the highway 300 to 400 yards away, he had the right to assume and to continue to assume it would be turned back to its own side in time to avoid the collision until he knew, or in the exercise of the highest degree of care should have known, that this would not be done. Until the driver had or should have had such knowledge, no mandatory duty rested upon him to sound a warning or otherwise act to avoid the collision. Wolfe v. Harms, Mo., 413 S.W.2d 204, 212(12); Moore v. Middlewest Freightways, Mo., 266 S.W.2d 578, 582(2). But if plaintiff's driver ever harbored such an assumption, his entertainment thereof was short-lived because "from the moment" he first saw the Oldsmobile he started procedures to avoid it. In any event, the permissible duration of such an assumption would terminate when the truck driver "definitely" saw that defendant was not looking ahead and was

unmindful of the dangerous situation. At that time the two vehicles were 100 to 300 yards apart, according to plaintiff's driver, and it then and thereafter became the mandatory duty of the truck's operator to do what was reasonably and safely necessary to avert the collision, which included a duty to sound a warning with the truck's horn [Owens v. Acme Oil Company, Tex.Civ.App., 408 S.W.2d 947, 950(1)] that should have been "in good working order." § 307.170, supra.

Determining that plaintiff was negligent is relatively simple; the onerous task is deciding whether its negligence was a proximate cause of the accident as a matter of law. The testimony of plaintiff's driver as to what he would have done had the truck been equipped with a workable horn and what defendant could or would have done to avoid the collision had a warning been sounded, was subject to timely objections and motions to strike because the testimony was conclusionary and constituted opinion evidence. 32 C.J.S. Evidence § 450, pp. 87–89. Since, however, the testimony was recited without a single objection from the plaintiff, its probative worth and value was for the jury as the fact trier [Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 607(5); Mayne v. May Stern Furniture Co., Mo.App., 21 S.W.2d 211, 213(2)], and the jury was at liberty to believe none, part or all of this testimony [Mayer v. Orf, Mo., 404 S.W.2d 733, 734–735(3, 4)] in deciding if plaintiff's negligence was a proximate cause of the casualty. General rules that a party is bound by the uncontradicted testimony of his own witness [Silberstein v. Berwald, Mo., 460 S.W.2d 707, 710(3); Kitchen v. Pratt, Mo.App., 324 S.W.2d 144, 147–148(3)] and that a party's own testimony may have the effect of a judicial admission to preclude him from disputing it [Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743, 747(2)], are subject to the qualification that before the rules are applicable the testimony must relate to absolute facts stated clearly and unequivocally. The testimony of a party or his witness which is based wholly on probabilities and suppositions and is composed of nothing but mere opinions and conclusions, does not constitute a judicial admission and cannot be reasonably classified as an absolute fact to convict him of contributory negligence as a matter of law. Smith v. Siercks, Mo., 277 S.W.2d 521, 525(1, 3); Johnson v. Bush, Mo.App., 418 S.W.2d 601, 605(5); Daly v. Schaefer, Mo.App., 331 S.W.2d 150, 155(7–9); 32A C.J.S. Evidence § 1040(1), pp. 767–768. While the unobjected-to suppositions, opinions and conclusions of plaintiff's driver were proper matters to be considered and weighed by the jury in the light of common sense and experience, they did not furnish either a proper or a safe guide for the trial court to determine the issue of contributory negligence as a matter of law. DeRossett v. Malone, 34 Tenn.App. 451, 239 S.W.2d 366, 378 (35, 36).

The issue of proximate cause is ordinarily a jury question, provided there be evidence from which it may reasonably infer that a warning could have resulted in an avoidance of the accident. Martin v. St. Louis Public Service Company, Mo. App., 368 S.W.2d 498, 500(1). Even though we believe the evidence was sufficient under the present record to make proximate cause a jury issue, we are confronted with the further problem, irrespective of the opinion and conclusionary testimony of plaintiff's driver, aforesaid, in deciding if there existed other evidence which would cause us to determine as a matter of law that plaintiff was proximately negligent [Ruediger v. American Bus Lines, Inc., Mo. (banc), 426 S.W.2d 4, 10(6)], bearing in mind that each case must be determined in the light of its own particular circumstances in testing plaintiff's contributory negligence as a matter of law. Bond v. Kansas City Transit, Inc., Mo., 401 S.W.2d 440, 443(2).

Unlike statutes that establish minimum standards of intensity and visibility for vehicular lights (e. g., §§ 304.022, 307.050,

307.055 and 307.060), the law governing horns (§ 307.170, supra,) simply provides that the required device shall be "capable of emitting a sound adequate in quantity and volume to give warning" without prescribing at what distance the horn (or whistle) must be audible to meet statutory requirements. An "adequate" or "audible" signal has been defined to be one "capable of being heard; a signal which is heard, or in the exercise of [due] care should have been heard" [Raymond v. Haught, 102 Ohio App. 337, 143 N.E.2d 731, 738(11); State v. Otto, 184 Neb. 597, 169 N.W.2d 612, 615(3); Clark v. Sterrett, 141 Ind. App. 384, 220 N.E.2d 779, 780(1)], but our research has not unearthed any authority establishing either a measured distance within which an adequate signal is presumably audible or a distance beyond which such a signal is presumed to be inaudible, and the evidence in this case nowhere suggests at what distance a "pretty loud" horn could have been heard under the circumstances existing at the time of the accident in question. Courts are bound to take judicial notice of familiar facts attending the use of motor vehicles [Brooks v. Stewart, Mo., 335 S.W.2d 104, 112(5)], so we note that wind rushing past an open window, a running engine, the "whine" of revolving tires and the operation of other contrivances installed on automobiles all produce noises that tend to muffle and cut off sounds outside the vehicle. State ex rel. State Highway Commission v. Turk, Mo., 366 S.W.2d 420, 422(3); McManus v. Buskirk, Ohio Com.Pl., 89 Ohio Law Abst. 97, 21 Ohio Op.2d 243, 183 N.E.2d 473, 477(6); Miller v. Western Pacific Railroad Company, 207 Cal.App.2d 581, 24 Cal.Rptr. 785, 793(10). Therefore, while we may assume that if a horn of the variety required by statute had been sounded it would have emitted a warning that would or should have been heard, yet being uninformed of the effect any distracting noises may have had on the audibility of such a warning, we are unable to judicially calculate at what distance a horn would or should have been audible to the defendant or to say as a matter of law that when defendant would or should have heard the warning he then had sufficient time and space to avoid the casualty. Moreover, plaintiff's driver never undertook a more definite surmise of defendant's speed than to say it was "going over fifty"; although he said the truck was traveling 30 to 40 miles an hour when the vehicles were 300 to 400 yards apart, we have no clue as to what the speed of the truck may have been thereafter while unsuccessful efforts were being made to bring it to a halt, and we are confronted with a disparity of 200 yards in the driver's estimate concerning the distance that separated the two vehicles when he "definitely" observed defendant's obliviousness. Albeit courts sometimes determine liability on exact calculations predicated upon unprecise estimates "in the judicial wonderland of the humanitarian doctrine" (Dillon v. Hogue, Mo.App., 381 S.W.2d 599, 602), without knowledge of the speed of either involved vehicle at any given moment and with no judicial lore to advise us what distance separated the truck and the Oldsmobile when defendant would or should have heard a warning, we cannot say as a matter of law or declare it to be a fact (65A C.J.S. Negligence § 251(6), at p. 801) that the accident would have been avoided if a warning had been sounded by plaintiff's driver. On the other hand, neither may we say, as a matter of law, that the failure to sound a warning was not a proximate cause of the collision. Rawley v. Eilermann Transfer Company, Mo.App., 390 S.W.2d 937, 941(6). In our view the issue of the proximate cause of plaintiff's negligence was a question for jury determination and was not a matter which the trial court should have undertaken to decide as a matter of law. The judgment is reversed and the cause is remanded to the Circuit Court of Dade County for a new trial.

STONE and HOGAN, JJ., concur.